# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHERN DIVISION AT KNOXVILLE

Cassie Heyward,                                )
                                               )
            *Plaintiff*,                        )
                                               )
v.                                             )
                                               )        Case No.:    3:13-CV-645-PLR-HBG
CDM Smith, Inc. a/k/a Camp                     )
Dresser & McKee, Inc., and URS                 )
CH2M Oak Ridge, LLC a/k/a UCOR,                )
                                               )
            *Defendants*.                       )

## Memorandum Opinion

Plaintiff Cassie Heyward was terminated from her position with CDM Smith, a government contractor, in June 2012. Mrs. Heyward filed the present lawsuit on October 23, 2013, alleging her termination was the result of unlawful race and age discrimination. In an opinion entered October 3, 2014, the Court dismissed several of Ms. Heyward's claims under Federal Rule of Civil Procedure 12(b)(6). [R. 17]. This matter now comes before the Court on two summary judgment motions filed by the defendants. [R. 25, 27]. The defendants assert that the plaintiff cannot present a *prima facie* case of discrimination. The Court agrees. For the reasons discussed below, the defendants' motions for summary judgment will be granted.

### i.

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer,* 301 F.3d 937, 942 (6th Cir. 2002). Courts may not resolve genuine disputes of fact in favor of the movant. *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (vacating lower court's grant of summary judgment for "fail[ing to] adhere to the axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor") (internal quotations and citations omitted).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**ii.**

The United States Department of Energy's East Tennessee Technology Park in Oak Ridge, Tennessee ("ETTP") was previously used to produce enriched uranium for atomic weapons and nuclear power. Nuclear and hazardous waste clean-up at ETTP and throughout Oak Ridge has been ongoing for decades. Numerous government contractors have performed work at ETTP and Oak Ridge over the years. Cassie Heyward, who is African American, began working for a Lockheed Martin at Oak Ridge in 1989 as an administrative assistant. In the late 1990s, when the Department of Energy (the "DOE") awarded its prime contract at ETTP to Bechtel Jacobs, Ms. Heyward transitioned from Lockheed Martin to Bechtel Jacobs. At that time, she worked as a section secretary, and was responsible for overseeing three other secretaries in her division. Ms. Heyward continued to work for Bechtel Jacobs for some time, and in late 2006, she became a purchasing specialist.

In 2011, UCOR took over for Bechtel Jacobs as the DOE's prime contractor. Part of UCOR's business model, referred to as "staff augmentation," involved outsourcing many positions that were previously performed in-house by Bechtel Jacobs. The outsourced employees worked for subcontractors who supplied the employees to UCOR at specific fixed rates. Staff augmentation apparently allows UCOR to quickly adjust its workforce levels to meet the changing demands of its contract with the DOE. Accordingly, when UCOR took over for Bechtel Jacobs, Cassie Heyward and other Bechtel Jacobs employees transitioned not directly to UCOR, but instead became employees of subcontractors. CDM, one of those subcontractors, became Ms. Heyward's employer. CDM provided a total of 48 non-technical, administrative employees to UCOR.

Ms. Heyward was placed in UCOR's procurement department, where her work consisted of overseeing fixed-cost contracts, rental agreements, purchasing cards, and service contracts. Ms. Heyward worked on a team with five other purchasing specialists. Their supervisor, Lynn Humphreys, was responsible for Ms. Heyward's day-to-day supervision. She established Ms. Heyward's schedule, assigned her work, and generally oversaw Ms. Heyward's daily activities.

As a closure contractor, UCOR's contract with the DOE required it to work toward finishing remediation and cleanup at ETTP. By accomplishing cleanup and remediation work, UCOR was reducing the amount of work left to do. As the scope of the remaining work diminished, UCOR's staffing needs likewise diminished. UCOR, therefore, had ongoing reductions on force. Between December 6, 2011, and March 19, 2015, a total of 196 workers were terminated from their positions at ETTP as a part of UCOR's ongoing reduction in force (the "RIF").

In May 2012, in a company-wide e-mail, UCOR's president explained that, as UCOR completed projects at Oak Ridge and their personal requirements decreased, it was necessary "to reduce personnel and realign the workforce to achieve the appropriate staffing levels to meet business goals . . . within budget." In implementing the RIF, UCOR took efforts to streamline procedures and tasks so that it could eliminate certain positions. Ms. Heyward's supervisor, Ms. Humphreys, was asked to recommend one position for elimination from her team of six purchasing specialists. Ms. Humphreys performed a review of her team and concluded that Ms. Heyward, while a hard worker, lacked the skillset, analytical abilities, communication skills, and technical competency possessed by her co-workers, and therefore was unable to handle (without assistance and instruction) the more complex contracts that her co-workers were able to handle.

In her declaration, Ms. Humphreys emphasized that she did not consider age, race, sex, or number of years' experience in evaluating her team.

Based on her recommendation, UCOR informed CDM that Ms. Heyward's position as a staff augmentation employee for UCOR at ETTP had been eliminated. On May 30, 2012, Ms. Heyward met with Steve Wood, her CDM manager, and he told her that her position was being eliminated as part of the RIF at UCOR. After she left, Ms. Heyward's work was distributed amongst the remaining five team members. Because her position was eliminated as part of the RIF, UCOR did not hire anyone else to replace Ms. Heyward.

### iii.

Because Ms. Heyward has not alleged any direct evidence of age or race discrimination, she must establish a *prima facie* case, which would then shift the burden to the defendants to articulate a legitimate, nondiscriminatory explanation for her termination. *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802-04 (1973). To establish a *prima facie* case of race discrimination under Title VII or 42 U.S.C. § 1981, a plaintiff must prove that: (1) she is a member of a protected group; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside a protect class or was treated differently from similarly situated members of the unprotect class. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007); *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000) (standard for Title VII claims is "equally applicable" to claims under 42 U.S.C. § 1981). To prove a *prima facie* case of age discrimination, the plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a younger person. The fourth element of both tests is modified in work-force-reduction cases to require the

plaintiff to show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Slapak v. Tiger Management Group, LLC*, 594 F. App'x 290, 295 (6th Cir. 2014) (quoting *Barnes v. GenCorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990)); *LaGrant v. Gulf & Western Mfg. Co., Inc.*, 748 F.2d 1087, 1090-91 (6th Cir. 1984) (age discrimination).

The Sixth Circuit has defined a work-force-reduction case as one where "business considerations cause an employer to eliminate one or more positions within the company." *Id.* at 294. If an employee is replaced after termination, then they were not eliminated as part of a work force reduction, and the fourth prong of the *prima facie* case is not modified. On the other hand, where the plaintiff's work is redistributed among other existing employees already performing related work, the work-force-reduction modification does apply. *Id.*

As an initial matter, the defendants do not dispute that Ms. Heyward is a member of a protected class who was qualified for her job. There is also no dispute that she suffered an adverse employment action. With those three elements established, we turn to the fourth element of Ms. Heyward's racial and age discrimination cases.

There is no question that this is a work-force-reduction case. While Ms. Heyward states in a conclusory fashion that the RIF was mere pretext for the defendants' discriminatory actions, she offers no evidence in the record to counter the fact that UCOR's business considerations caused it to reduce its staff. She also does not dispute the fact that her work was redistributed among the remaining members of her team who were already performing similar work. Finally, Ms. Heyward does not provide any evidence or even allege that UCOR hired anyone to replace her after her termination.

Because this is a work-force-reduction case, Ms. Heyward must submit "direct, circumstantial, or statistical evidence tending to indicate that her employer singled [her] out . . . for discharge for impermissible reasons." *Slapak*, 594 F. App'x at 295. Ms. Heyward has not done so. In Ms. Heyward's only attempt at introducing statistical evidence, she notes that in her department three individuals were terminated as part of the RIF, all of whom were African American females over the age of 50. Apart from the limited value of such a small sample size, narrowly focusing on the procurement department ignores the fact that the RIF was ongoing and company-wide. In May and June of 2012, a total of 26 individuals were terminated as part of the RIF. Twenty-one of them were Caucasian, four were African-American, and one was Asian. The racial makeup of the individuals terminated under the RIF flatly contradicts the plaintiff's assertion that African-Americans were singled out for termination. Likewise, Ms. Heyward readily acknowledges that she was not even the oldest person on Ms. Humphreys' team. One of the other five purchasing specialists was older than Ms. Heyward, and that individual was retained.

Instead of offering direct, circumstantial, or statistical evidence to support her claims, Ms. Heyward asserts in a conclusory manner that she was at least as well qualified as any of her co-workers who were retained—implicitly arguing that, if her work was good enough, she must have been terminated for some discriminatory reason. Even if that reasoning were persuasive, Ms. Heyward does not offer any evidence in support of it. Instead, Ms. Heyward simply offers her own personal assessment of her performance, and a plaintiff's subjective beliefs regarding her own work quality are insufficient to survive summary judgment. *See Mynatt v. Lockheed Martin Energy Systems, Inc.*, 271 F. App'x 470, 477-78 (6th Cir. 2008) ("A plaintiff's contention that he was better qualified than the workers who were retained is insufficient to establish a

prima facie case.").  In fact, "an employee's evaluation of [her] own performance or qualifications is irrelevant as a matter of law."  *Id.* at 478 (citing *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987).

Because Ms. Heyward disagrees with her supervisor's assessment of her relative performance, she reasons that she must have been terminated because of her race or age.  Under Ms. Heyward's logic, (a) she was terminated, and (b) she is African American and 59 years old, therefore (c) she was terminated *because* she is African American or *because* she is 59 years old. This Court has rejected such false syllogisms before.  *See, e.g., Shapira v. Lockheed Martin Corp.*, 88 F. Supp. 2d 813, 832 (E.D. Tenn. 1998) (J., Jordon).  Such conclusory assertions are not evidence, and cannot establish a *prima facie* case.

**iv.**

Ms. Heyward has failed to point to any evidence in support of her age and race discrimination claims.  Accordingly, she cannot make a *prima facie* case to put before a trier of fact.  The defendants' motions for summary judgment [R. 25, 27] are **Granted**.  This matter is **Dismissed in its entirety.**

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE